# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANNE ORTIZ, | ) 1:08cv01431 DLB |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Marianne Ortiz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on April 26, 2006, alleging disability since November 20, 1987, due to manic depression, back pain, heel spurs and stomach ulcers. AR 76-78. After being

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 3, 2008, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 52, 61-65, 67-71. ALJ Robert Evans held a hearing on October 18, 2007, and denied benefits on November 1, 2007. AR 15-24, 30-40. On March 14, 2008, the Appeals Council denied review. AR 8-12.

Plaintiff was first granted benefits in June 1989. AR 55-57. On August 10, 1999, an ALJ found that Plaintiff's disability continued. AR 43-47. Pursuant to another continuing disability review in 2005, an ALJ found that Plaintiff's disability had ceased. AR 15.

Hearing Testimony

ALJ Evans held a hearing on October 18, 2007, in Palmdale, California. Plaintiff appeared with her advocate, Diana Wade. Mr. Goldfarb, a vocational expert, also appeared but did not testify. AR 30.

Plaintiff testified that she had not worked in the past 15 years and had been on SSI from 1987 through 2005. AR 33. Plaintiff explained that her benefits were not terminated because she had improved, but rather because she failed to make an appointment to turn in her bank statement. Plaintiff did not re-file for reinstatement within one year because she was trying to find an attorney and had no transportation from North Edwards to the Social Security office. AR 38. She has not looked for work since her benefits were terminated because she has no transportation, and because of pain in her back, heel spurs and an inability to stand up for a long time. AR 34-35.

Plaintiff stated that she was disabled because of manic depression, hallucinations, obesity, high blood pressure and because she forgets things. AR 34. She explained that whether she could perform a job where she could sit all day depends on how her back feels. AR 35.

Plaintiff has not been to a doctor since her benefits were terminated because she lost her Medi-Cal insurance and there are no free clinics near where she lives. AR 36. She is supporting herself on food stamps and has not paid rent or utility bills. AR 36.

Medical Record

On August 5, 2006, Plaintiff saw Doojin Kim, M.D., for a consultive orthopedic evaluation. She complained of bilateral feet pain, explaining that she used to get monthly

cortisone injections but has not received any since she lost her insurance.  She reported that she gets pain from her heel spurs two to three times per week, lasting for 30 to 40 minutes, and rated the pain at a 10 out of 10.  Plaintiff reported that she lives with a friend and heats up cans of soup.  AR 177.

On physical examination, Plaintiff was described as obese but had no difficulty getting out of her chair, ambulating to the examination room, getting on and off the examination table and getting into and out of the supine position.  She could do finger-nose, fine finger movements and toe tap bilaterally.  Her tip toe, heel and tandem gaits were normal.  Range of motion testing was normal and there were no abnormalities of any joints.  Dr. Kim applied pressure to the soles of both feet without any elicitation of a pain response.  Motor strength, muscle tone and bulk were normal.  Sensation and reflexes were also normal.  AR 178-179.

Dr. Kim diagnosed bilateral feet pain and noted that no heel spurs could be found on examination.  A pain response to pressure was also absent, though it is fairly typical of heel spurs.  Dr. Kim opined that Plaintiff could stand and walk, with normal breaks, without restriction, and could sit without restriction.  She could lift and carry 50 pounds frequently and 100 pounds occasionally.  Plaintiff had no further limitations.  AR 179-180.

Plaintiff saw Greg Hirokawa, Ph.D., for a consultive examination on August 13, 2006.  Plaintiff reported feeling depressed and anxious.  She also complained that she had trouble sleeping, has a learning disability, gets upset easily, has mood swings and has difficulty concentrating.  Plaintiff reported depression since she was a teenager that worsened in 1990 when her mother died.  She denied any history of psychosis or psychiatric hospitalization.  Plaintiff was not currently receiving mental health treatment.  AR 171-172.

On mental status examination, Plaintiff appeared disheveled with poor eye contact.  Her stream of mental activity was slow and articulation at times appeared "mechanical (mild)."  She denied auditory or visual hallucinations and there was no evidence of delusional thinking.  Her mood was depressed and affect restricted.  Plaintiff reported her sleep as poor and her appetite as fair.  Her intellectual functioning appeared to be within the borderline range.  Her recent memory was intact but her past memory appeared slightly impaired due to her inability to recall certain

events throughout her life.  She was able to name three presidents and the governor of California, but was unable to name the capital of California, stating that it was "Washington."  Plaintiff's concentration was adequate.  Plaintiff reported doing some laundry, "straightening up," and heating up food in a can.  On a typical day, she reads the newspaper and magazines, listens to the radio, heats up something to eat, drinks soda water, sometimes visits a friend and watches television.  She did not enjoy anything, had few friends and was not involved in church or a social club.  AR 172-175.

Dr. Hirokawa diagnosed depressive disorder, not otherwise specified, rule out learning disability and generalized anxiety disorder.  Her current GAF was 61.  Her symptoms of depression and anxiety were within the mild range and her communications skills were fair.  There was a fair likelihood of her mental condition improving in the next 12 months.  Dr. Hirokawa opined that Plaintiff was not capable of managing her funds.  Her ability to remember locations and work-like procedures was good, as was her ability to understand, remember and carry out very short and simple instructions.  Her ability to remember and understand detailed instructions was fair.  Her abilities to maintain attention and concentration for extended periods, accept instructions, perform activities within a schedule, complete normal workdays without interruption, and interact with co-workers and the public were good.  Her social judgment and awareness of socially appropriate behavior were fair, as was her ability to function independently. Plaintiff's ability to withstand the stressors of work and deal with changes was fair.  AR 175-176.

On August 25, 2006, State Agency physician C. H. Dudley, M.D., completed a Psychiatric Review Technique form.  He determined that a residual functional capacity ("RFC") assessment was necessary.  In rating Plaintiff's functional limitations, he opined that Plaintiff was mildly restricted in activities of daily living and maintaining social functioning.  She had moderate difficulties in maintaining concentration, persistence and pace.  Dr. Dudley noted that the results from Plaintiff's May 1999 psychological evaluation were still valid, but her additional physical/mental impairments do not impose significant work related instructions.  Plaintiff retained the ability to perform simple, repetitive tasks, with no other restrictions.  AR 151-163.

Dr. Dudley also completed a Mental Residual Functional Capacity form. He found that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. Based on the evidence, he determined that Plaintiff retained the ability to understand, remember and carry out simple instructions, maintain adequate concentration, persistence and pace for simple tasks, complete a normal workday/workweek without significant interruptions from psychologically based symptoms, interact appropriate with supervisors, co-workers and the public, and adapt to the requirements of a normal workplace. AR 165-167.

ALJ's Findings

Prior to discussing Plaintiff's current application, the ALJ stated that he would not reopen Plaintiff's cessation denial. He explained that the evidence demonstrates that she is not mentally retarded and does not have degenerative disc disease "as was misapprehended in the prior applications." AR 18. He also decided not to adopt the prior ALJ's decision under *Chavez v. Bowen* because the material evidence shows that Plaintiff does not have a severe mental or physical impairment. AR 19.

In reviewing her current application, the ALJ determined that Plaintiff had the medically determinable impairments of chronic bilateral foot pain and depression. Nonetheless, Plaintiff retained the ability to perform simple, unskilled work and therefore did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities. He therefore found Plaintiff's impairments non-severe at step two and denied her claim for disability. AR 20-24.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen,* 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.,* 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; but (2) does not have an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)).

Here, Plaintiff argues that the ALJ improperly analyzed the medical evidence in determining that she did not have a severe impairment at step two.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

6

**DISCUSSION**

Plaintiff contends that the ALJ erred by determining, at step two, that her mental impairment was not severe. Specifically, she argues that the ALJ erred in addressing the opinions of consultive examiner Dr. Hirokawa and State Agency physician Dr. Dudley.

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if her impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

"An impairment ... may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir.2005) (internal quotation omitted). The Commissioner has stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Id.*; SSR 85-28.

Here, the ALJ found that Plaintiff's mental impairment did not significantly limit her ability to perform basic work activities and was therefore non-severe. In doing so, he first discussed Dr. Hirokawa's consultive examination results and his opinion that Plaintiff's abilities to perform basic work-related activities were "good." AR 21. For example, Dr. Hirokawa found that Plaintiff's ability to understand, remember and carry out very short and simple instructions was good, as were her abilities to maintain attention and concentration for extended periods, accept instructions, perform activities within a schedule, complete normal workdays without interruption, and interact with co-workers and the public. Plaintiff's ability to remember locations and work-like procedures was good. Her social judgment and awareness of socially appropriate behavior was fair, as was her ability to function independently. Plaintiff's abilities

withstand the stressors of work, deal with changes and function appropriately were fair. Plaintiff's social judgment and awareness of socially appropriate behavior was fair. AR 175-176.

Based mainly on Dr. Hirokawa's examination, the ALJ determined that Plaintiff's mental impairment was non-severe. In doing so, he chose to give more weight to Dr. Hirokawa, who examined Plaintiff, than to Dr. Dudley, the non-examining State Agency physician. The ALJ set forth Dr. Dudley's findings, which included moderate restrictions in maintaining concentration, persistence and pace. AR 21. Indeed, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). Although he rejected Dr. Dudley's opinion as to Plaintiff's ability to maintain concentration, he noted that Dr. Dudley agreed that Plaintiff could perform simple, repetitive tasks. AR 21.

Therefore, based on the *only* mental health evidence in the record, the ALJ reasonably concluded that Plaintiff's impairment was not a significant limitation on her ability to perform basic work activity. The ALJ was entitled to rely on Dr. Hirokawa's findings in doing so. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultive examiner's opinion is substantial evidence).

Insofar as Plaintiff contends that the ALJ ignores and rejects these opinions, her argument is without merit. The ALJ specifically stated that he gave more weight to Dr. Hirokawa's opinion as to Plaintiff's abilities to maintain concentration, persistence and pace. AR 21. Plaintiff's argument that the ALJ ignored the findings of Dr. Hirokawa and Dr. Dudley appears to be based on her interpretation of the evidence, which she believes supports a finding of severity. However, the Court must uphold the ALJ's decision where, as here, the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Plaintiff's reliance on Dr. Hirokawa's diagnosis that she was "operating in the range of borderline intellectual functioning" does not change this result. Opening Brief, at 8. Dr. Hirokawa did not diagnose borderline intellectual functioning, but rather stated that a learning disability needed to be ruled out. AR 175-176. In any event, a diagnosis does not equate to a disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

1  Plaintiff also points to a May 1999 psychological examination in support of her argument.
2  Citing Dr. Dudley's notation that this examination is "still valid," she contends that her
3  intellectual functioning places her in the "mildly retarded range." Opening Brief, at 8.  This
4  report is not in the record, however, and does not speak to the relevant time period.  Even if this
5  report was properly before the Court, the ALJ correctly relied on Dr. Hirokawa's opinions as to
6  Plaintiff's abilities, as discussed above, to support his step two finding.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Marianne Ortiz.

IT IS SO ORDERED.

Dated:  **September 22, 2009**          /s/ **Dennis L. Beck**
                                UNITED STATES MAGISTRATE JUDGE